UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS PLANERA & ASSOCIATES, LTD., | ) ) ) | |
| Plaintiff, | ) ) | No. 18 C 15 |
| v. | ) ) ) | Chief Judge Rubén Castillo |
| CLR AUTO TRANSPORT CORP., | ) ) ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

In this one-count diversity action, Thomas Planera & Associates, Ltd. ("Plaintiff") alleges that CLR Auto Transport Corp. ("Defendant") breached a contingent fee agreement between the parties by refusing to pay over $600,000 in attorney's fees and by refusing to allow an accounting of fees owed. (R. 22, Am. Compl. ¶¶ 58-61, 68-74.) Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (R. 25, Mot.) The Court has subject matter jurisdiction under 28 U.S.C. 1332(a).[1] For the reasons stated below, Defendant's motion is denied.

## BACKGROUND

The parties' dispute arises from Defendant's efforts to secure a contract with Volkswagen Group of America, Inc. ("VWGA"). In 2016, VWGA solicited bids for storing and maintaining diesel vehicles it had repurchased from owners pursuant to a vehicle recall. (R. 22, Am. Compl. ¶ 17.) Defendant prepared a proposal to submit to VWGA and engaged Plaintiff to review it. (*Id.*

---

[1] Plaintiff alleges, and Defendant admits, that it is an Illinois corporation with its principal place of business in Chicago Heights, Illinois, and that Defendant is an Indiana corporation with its principal place of business in Merrillville, Indiana. (R. 24, Answer ¶¶ 2-3, 5.) They are therefore diverse citizens of Illinois and Indiana, respectively. 28 U.S.C. 1332(c)(1). The amount in controversy exceeds $75,000, as Plaintiff seeks over $600,000 in damages. (R. 22, Am. Compl. ¶¶ 58-61.)

¶ 18.) Plaintiff advised Defendant that it did not meet VWGA's requirements for a bid due to lack of "proper equipment, staff, back office administration, financing, and land," but offered that Plaintiff could "utilize its business contacts" to restructure Defendant, procure the necessary personnel and assets, and prepare a new proposal which would satisfy VWGA's requirements. (*Id.* ¶ 19.) Defendant at first declined Plaintiff's offer, but after VWGA rejected its initial proposal, Defendant returned to Plaintiff to restructure its proposal and take the steps necessary to satisfy VWGA's requirements. (*Id.* ¶¶ 22-23.) After some negotiation, the parties agreed to a "modified contingent fee arrangement" whereby Plaintiff would be compensated only if Defendant was successful in securing the contract with VWGA. (*Id.* ¶¶ 24-25.) The retainer agreement provided that, if Defendant was successful, Defendant would pay Plaintiff the greater of the following each month: (1) 20% of "all income derived from and collected as receivable" on the VWGA contract; or (2) $10,000 plus specified hourly rates for work performed by Plaintiff's lawyers and staff. (*Id.* ¶ 24; R. 22-1, Retainer Agreement § 1.) Thus, once Defendant's income from the VWGA contract exceeded approximately $50,000 in a given month, Defendant would begin paying 20% of its contract-related income; until that time, Defendant would pay a fixed sum of $10,000 plus fees for time worked. (R. 22, Am. Compl. ¶ 24.) In addition, the retainer required Defendant to "report all income derived from the [VWGA] Contract . . . to [Plaintiff] no later than quarterly per year." (*Id.* ¶ 69; R. 22-1 Retainer Agreement § 2.)

After the parties executed the retainer agreement, Plaintiff retained a network of outside consultants and experts to restructure Defendant and provide the staffing, administration, land, and financing necessary to meet VWGA's requirements. (R. 22, Am. Compl. ¶¶ 26-27.) This included securing a lease of more than 20 acres of vacant land in Chicago Heights, Illinois, developing proprietary software to support Defendant's operations, and securing staffing to

prepare and coordinate the submission of Defendant's proposal to VWGA. (*Id.* ¶¶ 30-32.) Plaintiff alleges that Defendant had no knowledge of or access to the consultants and experts who provided this assistance, and therefore was entirely reliant on Plaintiff. (*Id.* ¶ 28.) Plaintiff alleges, for example, that 12th Street Properties, LLC ("12SP"), which provided financing to Defendant, was not willing to engage in a transaction directly with Defendant, but would instead participate only if Plaintiff's retained consultant acted as an escrow agent to intermediate the transaction. (*Id.* ¶ 29.) With the assistance of Plaintiff and its network of consultants and experts, Defendant submitted a second proposal to VWGA, which was approved by VWGA in September 2016. (*Id.* ¶¶ 33-34.)

In late October 2016, Plaintiff issued its first billing statement to Defendant, seeking payment of $10,000 per month plus hourly fees for the months of August, September, and October 2016. (*Id.* ¶ 41; R. 22-4, Invoice at 1-4.) Defendant did not pay the invoice, instead informing Plaintiff that it had spent all its funding on operations and needed additional funding. (*Id.* ¶ 42.) By this point, in November 2016, Defendant had not yet received any vehicles from VWGA and thus had no revenue from the VWGA contract. (*Id.* ¶ 44.) As a result, Plaintiff alleges, Defendant did not have sufficient cash on hand to continue operating, and requested Plaintiff's assistance in securing additional financing. (*Id.* ¶ 45.) Plaintiff assisted in securing an additional $87,000 in financing from 12SP and another lender, John Kwasny (*Id.* ¶¶ 46, 48.)

In early December 2016, Defendant began receiving vehicles from VWGA for storage. (*Id.* ¶ 47.) In February 2017, VWGA requested additional space for storing vehicles with Defendant and sought to extend Defendant's original contract. (*Id.* ¶ 49.) However, Defendant lacked the financing and resources to accommodate VWGA's requests. (*Id.* ¶ 50.) As a result, in March 2017, Plaintiff assisted in securing additional financing and further land in excess of 10

acres to store additional vehicles as VWGA had requested, including negotiating with the landlord to establish leases for Defendant's benefit. (*Id.* ¶¶ 51-54.) In May 2017, Defendant began receiving payments from VWGA of approximately $960,000 per month pursuant to the vehicle storage contract. (*Id.* ¶¶ 56-58.) These payments triggered the contingency fee under the parties' agreement, as 20% of Defendant's gross income from the VWGA contract now vastly exceeded $10,000 plus Plaintiff's hourly fees. (*Id.* ¶ 58.) In July 2017, Plaintiff issued an invoice to Defendant based on an estimated $4 million in gross payments Defendant had received up to that point from VWGA. (*Id.* ¶ 60.) Plaintiff estimated that it was owed $800,000 as 20% of the gross income from the VWGA contract, minus $180,150 that Defendant had already paid, resulting in an invoice balance of $619,850. (*Id.* ¶¶ 60-61.) Plaintiff alleges that Defendant never previously objected to Plaintiff's billing statements or its right to receive 20% of Defendant's monthly gross income from the VWGA contract, but that Defendant nevertheless refused to pay the balance of the July 2017 invoice. (*Id.* ¶¶ 61-62.) In August 2017, Plaintiff issued a demand for the invoiced amount and also requested that Defendant provide an accounting of its gross income from the VWGA contract, in order to confirm the correct amount of the 20% contingent payment, but Defendant refused and has never tendered documentation to allow an accounting. (*Id.* ¶¶ 63-66.)

Plaintiff then filed this suit in the Circuit Court of Cook County, Illinois, on December 14, 2017, asserting multiple claims against Defendant and two of its officers. (R. 1-1 at 5, Compl. at Law.) On January 2, 2018, the case was removed to this Court pursuant to 28 U.S.C. § 1446(a). (R. 1, Notice of Removal at 1.) Plaintiff filed an amended complaint on April 2, 2018, which is now the operative pleading. (R. 22, Am. Compl.) In the amended complaint, Plaintiff asserts just one claim: "breach of contract and accounting" against Defendant based on

4

Defendant's refusal to pay the balance owed under the retainer agreement or allow for an accounting. (*Id.* ¶¶ 68-79.)

On April 9, 2018, simultaneous with the filing of its answer and affirmative defenses, Defendant filed a motion for judgment on the pleadings.[2] (R. 25, Mot.) Defendant admits that it retained Plaintiff and executed the retainer agreement attached to Plaintiff's amended complaint. (R. 26, Mem. at 2.) Defendant contends, however, that the contingency fee provision is void and unenforceable because it violates the prohibition on excessive fees under Rule 1.5(a) of the Illinois Rules of Professional Conduct (the "Rules"), as well as the prohibition on acquiring an "ownership, possessory, security or other pecuniary interest adverse to a client" under Rule 1.8(a). (*Id.* at 4-11.) Defendant argues that judgment on the pleadings is appropriate on either basis. (*Id.*)

Plaintiff responds with several arguments. (R. 30, Resp.) First, Plaintiff argues that Illinois courts will uphold contingency fees once the client has reaped the benefits of the agreement, even if they violate ethical rules. (*Id.* at 2-3.) Second, Plaintiff argues that the Rules cannot be enforced by a private party in civil litigation, or, to put it differently, that only the Illinois Attorney Registration and Disciplinary Commission ("ARDC") has standing to enforce the Rules. (*Id.* at 3-6.) Third, Plaintiff argues that the contingency fee here is not unreasonable as a matter of law. (*Id.* at 6-13.) Last, Plaintiff argues in the alternative that genuine issues of fact as to the reasonableness of the contingency fee preclude judgment on the pleadings. (*Id.* at 13-14.)

---

[2] According to Plaintiff, (R. 30, Resp. at 2 n.1), Defendant failed to provide advance notice of its intent to move for judgment on the pleadings, as required by this Court's standing orders. *See* Judge Castillo Case Procedures – Motion Practice, https://www.ilnd.uscourts.gov/judge-info.aspx?/yhCO3oG+ns=. This ordinarily would be grounds to automatically deny Defendant's motion without prejudice. *Id.* However, in the interest of efficiency and because Plaintiff has responded in full to Defendant's motion, the Court will resolve the motion on its merits.

5

## LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed, but early enough to not delay trial. FED. R. CIV. P. 12(c); *Fed. Deposit Ins. Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 671 (N.D. Ill. 2017). The customary function of a Rule 12(c) motion is to dispose of a case based on the substantive merits of the parties' claims and defenses, so far as they are revealed in the pleadings and other information subject to judicial notice. *Fed. Deposit Ins. Corp.*, 252 F. Supp. 3d at 671-72; *see also* 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1369 (2018 ed.) (explaining the "essential function" of Rule 12(c) as "permitting the summary disposition of cases that do not involve any substantive dispute that justifies a full trial"). A court may grant judgment on the pleadings if no genuine issues of material fact need to be resolved and the moving party is entitled to judgment as a matter of law. *U.S. Commodity Futures Trading Comm'n v. Oystacher*, 203 F. Supp. 3d 934, 939 (N.D. Ill. 2016); *see also Alexander v. City of Chicago*, 994 F.2d 333, 335-36 (7th Cir. 1993) (clarifying that when a Rule 12(c) motion is used in its customary application, rather than to raise various defenses under Rule 12(b), "the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings"). However, "if it appears that discovery is necessary to fairly resolve a claim on the merits," the motion should be denied. *Fed. Deposit Ins., Corp.*, 252 F. Supp. 3d at 672.

In evaluating a motion for judgment on the pleadings, the Court must accept the non-movant's factual allegations as true and draw all reasonable inferences in its favor, but need not accept as true any legal assertions. *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). The Court's review is limited to the pleadings; however, it may also take into

6

consideration documents incorporated by reference into the pleadings and matters properly subject to judicial notice. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

## ANALYSIS

### I.   Illinois Rule of Professional Conduct 1.8(a)

The Court first addresses Defendant's appeal to Rule 1.8(a), which forbids a lawyer from "knowingly acquir[ing] an ownership, possessory, security or other pecuniary interest adverse to a client" unless the terms are "fair and reasonable to the client," among other requirements. ILL. R. PROF'L CONDUCT 1.8(a)(1). Defendant argues that the contingency fee agreement with Plaintiff violates Rule 1.8(a), and is therefore void and unenforceable, because it constitutes such an interest but its terms are not fair and reasonable. (R. 26, Mem. at 9.) The Court concludes that Rule 1.8(a) does not apply at all to the contingency fee agreement alleged by Plaintiff.

No cases explain what qualifies as an "ownership, possessory, security or other pecuniary interest adverse to a client" under Rule 1.8(a). However, the comments to the Rule expressly state that it "does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5[.]" ILL. R. PROF'L CONDUCT 1.8 cmt. [1]. In addition, Defendant entirely fails to explain how a lawyer's contingency fee qualifies as an interest "adverse to" a client under the Rule, and the Court rejects this proposition. In an ordinary contingency fee agreement, the lawyer benefits only from a favorable outcome for the client, and benefits more the more favorable the outcome; their interests are thus aligned, not adverse.[3] *See Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("[C]ontingent fees are used in a wide variety of legal settings . . . as a method of more closely aligning the lawyer's interests with those of his client by giving him

---

[3] Although the alignment of interests is not always perfect in a contingency-fee arrangement, *see Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (explaining that the "interest-alignment device" of contingent fees is "not perfect" because it fails to incentivize effort that only marginally contributes to the client's financial recovery), that is still far from being adverse.

7

a stake in a successful outcome."); *Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *5 (N.D. Ill. May 17, 2011) ("[T]he contingent fee uses private incentives . . . to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." (citation and internal quotation marks omitted)). Although the agreement here is for a "modified contingent fee" that sets a floor on Plaintiff's monthly compensation, (R. 22, Am. Compl. ¶ 24), nothing about this arrangement suggests an adversity of interests that would trigger Rule 1.8(a).

In its reply brief, Defendant pivots somewhat, arguing instead that the contingency fee agreement qualifies as a "business transaction with a client" that is also regulated by Rule 1.8(a). (R. 37, Reply at 7-8.) The Rule also requires that the terms of any "business transaction" that a lawyer enters into with a client be "fair and reasonable" to the client. ILL. R. PROF'L CONDUCT 1.8(a)(1). The comments to the Rule further explain that it applies "when the lawyer accepts an interest in the client's business . . . as payment of all or part of a fee," because accepting such an interest qualifies as a business transaction with the client. ILL. R. PROF'L CONDUCT 1.8 cmt. [1]. Defendant contends that Plaintiff's 20% contingency fee gives Plaintiff just such an "interest in the client's business" because it "essentially . . . make[s] [Plaintiff] a silent partner in [Defendant]'s dealings with Volkswagen." (R. 37, Reply at 8.)

The Court is not persuaded. Case law provides limited guidance on what constitutes a "business transaction with a client" under Rule 1.8(a). Taking out a loan from a client certainly qualifies, and is the conduct to which the Rule is most commonly applied. *E.g.*, *In re Timpone*, 804 N.E.2d 560, 563 (Ill. 2004); *In re Imming*, 545 N.E.2d 715, 720-21 (Ill. 1989) (applying predecessor to Rule 1.8(a), Rule 5-104(a) of Illinois Code of Professional Responsibility); *In re Demuth*, 533 N.E.2d 867, 871 (Ill. 1988) (same). Entering into a formal business partnership with a client may also qualify. *See In re Owens*, 581 N.E.2d 633, 634 (Ill. 1991). However, an

8

Illinois appellate court has rejected an argument similar to Defendant's contention here, holding that a contingency fee agreement that was tied to the client's revenue from licensing or litigating patents—the subject of the representation—was not a "business transaction" with the client subject to Rule 1.8(a). *See Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 918 N.E.2d 1117, 1121 (Ill. App. Ct. 2009) (rejecting argument that parties' "contingent fee arrangement in which [the lawyer] would receive a percentage of income realized by [client] from certain patents for which [the lawyer] was to provide legal advice and representation" qualified as a "business transaction" with a client subject to Rule 1.8(a), explaining that plaintiff "misapprehended which rule applies"). As in that case, Plaintiff's contingent fee here is a percentage of Defendant's revenue from the subject matter of the representation—namely, the VWGA contract. *See id.* The Court agrees that such a contingency fee agreement does not constitute a "business transaction" within the meaning of Rule 1.8(a).

For these reasons, the Court concludes that Rule 1.8(a) does not apply to the contingency fee agreement alleged by Plaintiff, and therefore rejects Defendant's motion to the extent it is premised on this Rule.

## II.     Illinois Rule of Professional Conduct 1.5(a)

Rule 1.5(a), titled "Fees," provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee[.]" ILL. R. PROF'L CONDUCT 1.5(a). Defendant contends that Plaintiff's contingency fee is unreasonable in violation of Rule 1.5(a) because it "far exceeds the reasonable value of the services rendered." (R. 26, Mem. at 4-11.) Defendant claims that, because the VWGA contract is ongoing, the fee agreement unreasonably gives Plaintiff "potentially unlimited future income" and is therefore void and unenforceable. (*Id.* at 9; *see also id.* at 8 ("If [Defendant] were to pay the Fee Agreement as [Plaintiff] reads it, [Plaintiff] would receive at least $2.3 million . . . annually for the indefinite future[.]").)

9

Plaintiff counters that Rule 1.5(a) cannot be enforced by a private party in civil litigation as Defendant seeks to do here, because the Rules may be enforced only in disciplinary proceedings brought by the ARDC. (R. 30, Resp. at 3-6.) Plaintiff relies on the Preamble to the Rules, which states that they "are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." ILL. R. PROF'L CONDUCT pmbl ¶ 20. The Preamble further explains that "[t]he fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.* Although the Preamble strongly implies that the Rules may only be enforced in attorney disciplinary proceedings, courts in Illinois have routinely allowed parties to contest the enforceability of attorney fee agreements that violate the Rules, on the theory that the Rules express Illinois public policy and have "the force and effect of law."[4] *Donald W. Fohrman & Assocs., Ltd. v. Mark D. Alberts, P.C.*, 7 N.E.3d 807, 815 (Ill. App. Ct. 2014) (quoting *Romanek v. Connelly*, 753 N.E.2d 1062, 1067 (Ill. App. Ct. 2001)); *see also Chandra v. Chandra*, 53 N.E.3d 186, 196 (Ill. App. Ct. 2016) (explaining that "courts will declare a contract unenforceable as violative of public policy only when it expressly contravenes the law or a known public policy of our state," which would include "our rules of professional conduct");

---

[4] The predecessor to the Rules, the Illinois Code of Professional Responsibility, was at one time considered not binding on the courts. *See Cross v. Am. Country Ins. Co.*, 875 F.2d 625, 628 (7th Cir. 1989) ("[C]ontrary to defendant's contention, the Code . . . is not binding on the courts. . . . Instead, it provides guidelines for proper professional conduct and attorneys can be disciplined for failing to adhere to its requirements. While one Illinois Appellate Court has said that the Code has the function of law, . . . subsequent Illinois Supreme Court decisions have held that the Code is not binding on the courts[.]"). That changed, however, in 1990. *See Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1302 (7th Cir. 1995) ("The Illinois Supreme Court has made clear that . . . the Illinois Rules of Professional Conduct . . . bind the courts as a matter of law."); *Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 90 (7th Cir. 1993) ("In 1990, following our decision in *Cross*, the Illinois Supreme Court changed or clarified its position regarding the binding effect of the Code of Professional Responsibility. In *In re Vrdolyak*, the court made it clear that the Code is now binding on the courts as a matter of law.").

10

*Richards v. SSM Health Care, Inc.*, 724 N.E.2d 975, 978-82 (Ill. App. Ct. 2000) (evaluating whether fee-sharing agreement between lawyer referral service and attorney violated Rule 1.5, explaining that "where attorney conduct is at issue, we look to the supreme court rules [of professional conduct] for expressions of public policy" and that "[c]ontracts between lawyers that violate Rule 1.5 are against public policy and cannot be enforced"); *Albert Brooks Friedman, Ltd. v. Malevitis*, 710 N.E.2d 843, 846 (Ill. App. Ct. 1999) (holding that fee-splitting agreement between attorneys was unenforceable because it violated Rule 1.5(f), explaining that "[s]upreme court rules have the force of law and are indicative of public policy in the area of attorney conduct"); *McCracken & McCracken, P.C. v. Haegele*, 618 N.E.2d 577, 582 (Ill. App. Ct. 1993) (holding that trial court was required to consider reasonableness of attorney's 25% contingency fee under predecessor to Rule 1.5(a), Disciplinary Rule 2-106 of the Code of Professional Responsibility, where client "raised the excessiveness of the contingent fee as a defense to [the attorney's] action on the contract"); *U.S. ex rel. Figurski v. Forest Health Sys.*, No. 96 C 4663, 1999 WL 1068659, at *2 (N.D. Ill. Nov. 17, 1999) ("Contracts that violate the Illinois Rules of Professional Conduct are against public policy, and are therefore unenforceable.").

Indeed, in *McCracken & McCracken, P.C. v. Haegele*, 618 N.E.2d 577 (Ill. App. Ct. 1993), an Illinois appellate court rejected, under analogous circumstances, the exact argument that Plaintiff makes here. In that case, an attorney sought to enforce a contingency fee agreement related to a property tax appeal undertaken for a client. *Id.* at 578-79. As a defense to payment, the client asserted that the fee was excessive under the predecessor to Rule 1.5(a), Disciplinary Rule 2-106 of the Code of Professional Responsibility. *Id.* at 581-82. The attorney argued in response, as Plaintiff does here, that the requirements of the Rule could be raised "only in a

11

disciplinary proceeding." *Id.* at 581. The court rejected this argument and remanded for the trial court to consider the reasonableness of the contingency fee. *Id.* at 582.

Plaintiff relies on *Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 918 N.E.2d 1117 (Ill. App. Ct. 2009), where an Illinois appellate court considered whether a 40% contingency fee should be held unenforceable as violating Rule 1.5(a). *Id.* at 1121-22. While the court concluded that the fee was reasonable and thus did not violate Rule 1.5(a), the court commented further that "even when . . . a fee agreement violates rules of professional conduct, that fact alone does not invalidate the agreement." *Id.* at 1122. Plaintiff's reliance on this statement, (R. 30, Resp. at 5), is misplaced: It refers not to any principle limiting enforcement of the Rules to attorney disciplinary proceedings, but rather—as the court's subsequent citation reveals—to the doctrine that "not every violation of every rule of professional responsibility can be assumed to be the kind of grave, injurious, and nontechnical violation . . . that justifies the voiding of a contract."[5] *Am. Home Assur. Co. v. Golomb*, 606 N.E.2d 793, 796 (Ill. App. Ct. 1992); *see also Premier Networks, Inc.*, 918 N.E.2d at 1122 (citing *American Home Assurance Co.*). *Premier Networks, Inc.* thus does not support Plaintiff's position.

Plaintiff also relies on *Rosenbaum v. White*, 692 F.3d 593 (7th Cir. 2012), (R. 30, Resp. at 3-5), but that case likewise does not support Plaintiff's contention. In *Rosenbaum*, the U.S. Court of Appeals for the Seventh Circuit rejected the argument that lawyers' responsibilities under the

---

[5] The Court notes for completeness that the continuing vitality of this doctrine is doubtful. It appears to have originated with *Cross v. American Country Insurance Co.*, 875 F.2d 625 (7th Cir. 1989), which held that "minor technical" violations of the Code of Professional Responsibility did not render a fee agreement unenforceable because "the Code . . . is not binding on the courts." *Id.* at 628; *see also Maksym v. Loesch*, 937 F.2d 1237, 1244 (7th Cir. 1991) (citing *Cross* for this rule); *K. Miller Const. Co. v. McGinnis*, 913 N.E.2d 1147, 1157 (Ill. App. Ct. 2009) (citing *Cross*), *aff'd in part, rev'd in part*, 938 N.E.2d 471 (Ill. 2010); *Am. Home Assur. Co. v. Golomb*, 606 N.E.2d 793, 796-97 (Ill. App. Ct. 1992) (same). But *Cross*'s conclusion that the Code is not binding was later expressly repudiated as "no longer . . . a valid reflection of Illinois law." *Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 90-91 (7th Cir. 1993).

Indiana Rules of Professional Conduct (the "Indiana Rules") could support the plaintiffs' legal-malpractice and constructive-fraud claims. *Rosenbaum*, 692 F.3d at 600, 604-05. After reviewing the Preamble to the Indiana Rules, the Seventh Circuit concluded that, "[a]lthough the Rules may form a standard of conduct by which a lawyer's duty can be measured, such a duty must arise from common law and may not be predicated on the Rules themselves." *Id.* at 604. Although Plaintiff is correct that the Preambles to the Indiana Rules and the Illinois Rules contain nearly identical language disapproving their use as a basis for liability, Defendant is not relying on the Rules to assert that Plaintiff owed it any legal duty; instead, Defendant asserts that the parties' contingency fee agreement directly contravenes the Rules. Accordingly, *Rosenbaum* is not applicable here, and the Court rejects Plaintiff's argument that the Rules may not be asserted by private parties in litigation.

However, the Court agrees with Plaintiff that genuine issues of fact preclude judgment on the pleadings that Plaintiff's contingency fee is unreasonable as a matter of law. (*See* R. 30, Resp. at 13-14.) Rule 1.5(a) identifies numerous factors that bear on the reasonableness of a fee: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." ILL. R. PROF'L CONDUCT 1.5(a). The limited record presently before the Court is entirely inadequate for a careful evaluation of these fact-intensive questions. In addition,

the limited facts before the Court are almost entirely disputed. Although Defendant claims that "[s]ufficient facts are established by the pleadings" to allow the Court to hold the contingency fee void and unenforceable as a matter of law, (R. 37, Reply at 1), Defendant's answer denies nearly all of Plaintiff's allegations concerning the nature and extent of the work that Plaintiff performed. (*See* R. 24, Answer ¶¶ 17-21, 23, 26-32, 35-39.) This issue is highly relevant to the reasonableness of Plaintiff's fee. *See* ILL. R. PROF'L CONDUCT 1.5(a)(1); *In re Doyle*, 581 N.E.2d 669, 677 (Ill. 1991) (evaluating "the nature and extent of the legal services provided" in inquiry into reasonableness of fee). Indeed, Defendant expressly denies that Plaintiff fully performed its duties under the retainer agreement and asserts that "the objectives of [Plaintiff's] representation have not been complete[d]." (R. 37, Reply at 2.) Defendant also highlights its disagreement with Plaintiff's allegation that Defendant "would not have acquired the [VWGA] contract but for [Plaintiff's] services." (*Id.* at 8.) In short, there are significant factual issues, either disputed or entirely undeveloped at this early stage, that preclude entry of judgment on the pleadings. *See Fed. Deposit Ins., Corp.*, 252 F. Supp. 3d at 672 (explaining that "if it appears that discovery is necessary to fairly resolve a claim on the merits," a motion for judgment on the pleadings should be denied).

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings (R. 25) is DENIED. The parties shall appear for a status hearing on October 31, 2018, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October 11, 2018**